**Thomas Revard THIEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 63774.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 26, 1984.

---

**594**

Steve Hebert, Baytown, for appellant.

John B. Holmes, Jr., Dist. Atty. and Joan Fisher and Raymond Fuchs, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

Our prior opinion is withdrawn.

This is an appeal from a conviction for escape. See V.T.C.A., Penal Code, § 38.07. After the jury found appellant had been previously convicted of two prior felony offenses as alleged in the indictment, punishment was assessed at life imprisonment. See V.T.C.A., Penal Code, § 12.42(d) (1973) (prior to the 1983 amendment thereto).

On August 28, 1978, the appellant was in custody at the Harris County Rehabilitation center on a charge of unauthorized use of a motor vehicle. On that morning he was transported to the Ben Taub Medical Center in Houston by Deputy Sheriff Joseph Harris. After appellant was examined by a doctor, he and Deputy Harris went to the appointment desk to secure another appointment. Appellant asked and was given permission by Harris to return to talk to the doctor. Harris continued to make the future appointment. In three minutes he went to the clinic room and discovered appellant had left the clinic area by another door. Appellant was not ap-

prehended for almost two months. Appellant testified that at the time he was suffering from "bronchial cancer," that the treating doctor was Vietnamese, spoke little English, was difficult to communicate with and was unconcerned with his condition. He stated when he complained to Deputy Harris he encountered a similar attitude.

On appeal appellant raises two grounds of error. First, appellant contends the court erred in a jury instruction which precluded the jury from considering evidence relevant to conditions of his confinement, his physical condition, the treatment received and his intent "not to avoid confinement but to avoid the lack of medical treatment.

Appellant directs attention to the abstract portion of the court's charge stating:

"A person charged with an offense commits an offense if he intentionally or knowingly escapes from custody.

"So that you may better understand the nature of the offense with which the defendant is charged, I now define certain terms and words.

"'Escape' means unauthorized departure from custody.

"'Custody' means detained or under arrest by a peace officer or under restraint pursuant to an order of a court.

"Sheriffs and their deputies are peace officers."

There were no objections to the court's charge nor any special requested instructions. See Articles 36.14 and 36.15, V.A.C.C.P. Where there is no objection is made to the court's charge to the jury, nothing is preserved for review. *Johnson v. State*, 629 S.W.2d 731 (Tex.Cr.App.1981); *Manry v. State*, 621 S.W.2d 619 (Tex.Cr. App.1981). See also *Mulchahey v. State*, 574 S.W.2d 112, 118 (Tex.Cr.App.1978); *Slanker v. State*, 505 S.W.2d 274, 275 (Tex. Cr.App.1974).

Further, the jury instructions were proper regarding the offense of escape. V.T. C.A., Penal Code, § 38.07. It appears also that appellant is arguing that the court

should have disregarded the Texas statute and instructed the jury pursuant to federal case law. The authorities cited are not persuasive. Appellant's ground of law is without merit and is overruled.

Next appellant argues the "trial court erred and abused its discretion in refusing to recognize the standard necessity/duress defenses to the offense of escape, defenses which would affirmatively justify or excuse appellant's actions."

It appears from the argument advanced under such ground of error that appellant is really complaining about the exclusion by the court of certain testimony, and not that the court failed to sua sponte charge on the defense of necessity.

 He calls attention to certain page numbers in the record which he claims demonstrates that the court "openly proclaimed" that evidence of appellant's physical condition, lack of medical treatment, etc., was not admissible "on the crime of escape," and that if admitted would not constitute a defense to escape. The page numbers cited have been carefully examined. It appears these pages have reference to three or four witnesses and to jury argument by the prosecutor. The ground of error is multifarious and not in accordance with Article 40.09, § 9, V.A.C.C.P. Nothing is presented for review. *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr.App.1983). Further, mere reference to pages of record does not sufficiently identify complained of testimony and rulings of the court and does not constitute a ground of error. *Hurd v. State*, 513 S.W.2d 936 (Tex.Cr.App.1974); *Arivette v. State*, 513 S.W.2d 857 (Tex.Cr. App.1974); *Jackson v. State*, 494 S.W.2d 854 (Tex.Cr.App.1973); *Erwin v. State*, 463 S.W.2d 13 (Tex.Cr.App.1971); *Dominguez v. State*, 459 S.W.2d 628 (Tex.Cr.App.1970); *Alexander v. State*, 458 S.W.2d 656 (Tex. Cr.App.1970).

We do note that several of the pages referred to mention a Louis Sheptin, who was subpoenaed but failed to appear and informed appellant he did not want to appear. Appellant proffered testimony that Sheptin was an inmate at the Rehab. Center and would testify that he saw appellant spitting up blood and coughing and being denied medical attention. Other proffered testimony showed Sheptin was involved in a federal civil rights investigation concerning a death at the Rehab. Center, and would not testify for that reason. Other pages cited appear to refer to Allister Miller and Hunter Carruth, whom the appellant proposed to call as witnesses. No bill of exception was perfected with regard to their testimony, but appellant proffered evidence they would relate they saw appellant spitting up blood and being denied medical treatment. There was no showing as just when they observed appellant or the relevance to the offense charged. Other page references are made to the testimony of Eulala Lou Gelsthorpe, but we are not informed just what testimony was excluded or what rulings of the court are complained of. Other page numbers referred to concern unobjected to jury argument by the prosecutor.

It is impossible to appraise the ground of error supposedly advanced.

We do observe that appellant offered no evidence of a bona fide effort to surrender or return to custody as soon as any claimed necessity for escape had passed.

In *United States v. Bailey*, 444 U.S. 394, 412, 100 S.Ct. 624, 635, 62 L.Ed.2d 575 (1980), the Supreme Court wrote:

"... in order to be entitled to an instruction on or necessity as a defense to the crime charged, an escapee must offer evidence justifying his continued absence from custody as well as his initial departure and that an indispensable element of such offer is testimony of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force."

We find no merit in appellant's ground of error.

The judgment is affirmed.

CLINTON, J., concurs in the result.

TEAGUE, Judge, concurring and dissenting.

On February 1, 1984, through an opinion I authored for the Court, this Court affirmed appellant's conviction. No dissents were registered. Three judges concurred in the result. Notwithstanding what occurred on original submission, on March 28, 1984, at least five judges voted to grant the State's motion for rehearing. Today, a majority of this Court orders the original opinion withdrawn. In its place, the majority substitutes an opinion I find is best described as "an impeccable exercise in stating undisputed general principles of law and technical legalism," *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575, 596 (1980) (Blackmun, J., concurring opinion), and adds nothing whatsoever to the jurisprudence of this State. I also find that although it has been given the opportunity to write and give guidance to the bench and bar of this State in the area of the law dealing with the defense of necessity as it might relate to the offense of escape, the majority declines to do so. See V.T.C.A., Penal Code, Section 9.22, which governs the defense of necessity, and Section 38.07, which governs the offense of escape.

I, for one, believe that the members of the bench and bar of this State, who have a direct or indirect interest in criminal law, look to this Court for guidance in the field of criminal law. This Court, however, even when given the opportunity to do so, oftentimes fails to furnish such guidance through its opinions. I find that what the Court does not do in this cause causes the opinion in this cause to fall within the above class of decisions.

Because I believe that someday in the future the opinion I authored might aid some trial judge, prosecutor, or defense attorney, who might be confronted with a similar factual situation which calls for the application of the defense of necessity to the offense of escape, as amended, I attach a copy of that opinion to this opinion as an appendix.

I would be the first to agree that the style which appellant's counsel's uses to formulate and present his grounds of error leaves much to be desired. Nevertheless, I find his contentions to be understandable and sufficiently in compliance with the provisions of Art. 40.09, Section 9, V.A.C.C.P., to warrant this Court to review them.

A reading of appellant's grounds of error, in light of the record of appeal, makes it obvious to me that both of appellant's grounds of error relate to his counsel's contention that the trial court should have admitted into evidence certain proffered testimony that went to appellant's justification for escaping from lawful confinement.

Counsel argues in his brief, although he does so implicitly, that because the proffered testimony was admissible evidence, this rendered the court's final charge fundamentally erroneous because it did not instruct the jury on the defense of necessity to the offense of escape.

Thus, it should be obvious to anyone that only in the event that this Court agrees with counsel's first proposition will it then become necessary to address the second proposition; whether the charge was fundamentally erroneous because of the omission therefrom of a defensive instruction to the offense of escape. Thus, the majority opinion has put the cart before the horse by discussing appellant's grounds of error in the order presented, which I will agree is the usual way to write an opinion. However, there are exceptions to this rule. In this instance, if appellant's second ground of error, that the trial court erred by not admitting into evidence the proffered testimony, is overruled, this causes the first ground of error to become moot.

The majority overrules appellant's first ground of error because it finds that appellant did not object to the court's charge. It also finds that he did not submit a requested charge. However, it does not consider whether the omission in the charge about which appellant complains might constitute fundamental error. Of course, it is elementary law that the failure to object or submit a special requested charge does not pre-

clude this Court from reviewing the charge to make the determination whether the charge was fundamentally erroneous. *Willis v. State,* 669 S.W.2d 728 (Tex.Cr. App.1984); *Plunkett v. State,* 580 S.W.2d 815 (Tex.Cr.App.1979).

It is also elementary that a defensive issue should not be submitted to the jury unless there is some evidence before the jury which supports such defensive issue. However, the question presented by appellant's second ground of error, whether the trial court erred by excluding the proffered testimony, is not the same question as whether the trial court erred by not instructing the jury on some defensive issue.

The majority has this to say about appellant's second ground of error: "It is impossible to appraise the ground of error supposedly advanced," thus enabling it to avoid discussing appellant's contention that the trial court erred by excluding from evidence the proffered testimony.

After having read the record and the briefs that have been filed by appellant's counsel and the assistant district attorney, I strongly disagree with the majority's conclusion that "[i]t is impossible to appraise the ground of error supposedly advanced." I also believe that appellant and his counsel are entitled to know why the proffered testimony was both inadmissible evidence and insufficient to raise the defense of necessity in this cause. The majority, however, declines to give any reasons. Instead, it restates some well known general principles of law and a conclusion, without any analysis, discussion, or reasoning, which leaves the bench and bar without any guidance in this area of the law.

Although the majority opinion holds that "[i]t is impossible to appraise the [second ground of error] supposedly advanced," it nevertheless proceeds, without any analysis, discussion, or reasoning, to quote an excerpt from *United States v. Bailey,* 444 U.S. 394, 62 L.Ed.2d 575, 100 S.Ct. 624 (1980), which, in light of the facts presented in *Bailey,* is inapplicable to this cause.

I pause to ask: If appellant's ground of error is insufficient for appellate review, why say more? Is it necessary to fire another bullet into the already dead ground of error?

Not only do I disagree with the majority's conclusion, that "[i]t is impossible to appraise the ground of error supposedly advanced," I also find its consideration of the ground of error flies in the face of the provisions of Art. 40.09, Section 9, V.A.C. C.P. I further believe that any first year law student, who has passed a course in criminal law, read the record of appeal, read appellant's second ground of error, and the discussion thereunder, could easily understand what appellant's counsel is complaining about in his second ground of error, namely, that the trial court erred in excluding the proffered testimony he wanted to introduce into evidence before the jury to justify why he had escaped from lawful confinement.

By quoting the excerpt from *United States v. Bailey,* supra, the majority appears to be relying upon that decision for authority that appellant's second ground of error is without merit. It states: "no evidence of a bona fide effort to surrender or return to custody as soon as any claimed necessity for escape had passed" was presented by appellant.

By its statement, it is obvious to me that the majority demonstrates a lack of understanding of the offense of escape, see V.T. C.A., Penal Code, Sections 38.07 and 38.-01(3). There are two distinct ways in which the offense of escape might be committed, namely, (1) leaving lawful custody without authority or (2) failing to return to lawful custody following temporary leave for a specific purpose or limited purpose. In this instance, the jury was only instructed on the first way that the offense might be committed, namely, it was told through the definitional portion of the charge that it could find appellant guilty *only if it found that he departed from custody without lawful authority.* The jury, however, was not instructed that it could find appellant guilty if it found he failed to return to custody following temporary leave for a specific purpose or limited period.

Thus, in Texas, if a person is accused of committing the offense of escape, *by departing from custody without lawful authority*, and he was justified in departing from custody, it matters not what might have caused him to return to lawful custody, or what his reason might have been for remaining at large. Anything that relates to what occurred *after* he crossed the threshold of lawful custody is generally inadmissible evidence.

Because appellant was convicted solely for departing from custody without lawful authority, I erred when I put into the opinion I authored for the Court requirement number 5 in the five-part test I had formulated. However, this does not change the result I reached because appellant did not satisfy part 4 of the test, in that he did not present any evidence which would have established that within a reasonable period of time after he had escaped he sought or attempted to seek outside medical assistance. Thus, I am amending the opinion by deleting from the test I had formulated requirement number 5. Also see the opinion attached hereto as an appendix.

The majority's reliance upon *United States v. Bailey*, supra, if that is what it is doing when it refers to that case, overlooks what that case was all about. There, the Supreme Court was called upon to address the single question, whether the federal escape statute, see 18 U.S.C. Section 751(a), had a mens rea requirement. The Court first held that the mens rea requirement for the federal crime of escape was "knowledge," and then held that the availability of the defense of duress or necessity to such crime depended upon whether there was a bona fide effort to surrender or return to custody. Under the facts of the case, it found the defendant had not satisfied its new test.

However, because of V.T.C.A., Penal Code, Section 6.02, the Texas escape statute, see Section 38.07, supra, requires a culpable mental state; thus, it is unnecessary for this Court to make the determination whether our statute requires a culpable mental state.

Furthermore, and contrary to Texas law, there is no federal statutory defense of necessity. Such defense, when allowed in a federal court, has been manufactured from the common law. See, for example, *United States v. Vigol*, 1 Dall. 346, 1 L.Ed. 409 (1795), and the federal cases which have in principle followed *Vigol* since 1795.

I must ask: After the present penal code of this State went into effect, when has this Court ever expressly discussed the applicability of a common law defense to the facts of a particular case? Compare, however, *Williams v. State*, 630 S.W.2d 640 (Tex.Cr.App.1982), in which this Court, without taking into consideration the common law defense of accident, and whether it could have been applied to that case, stated: "There is no defense of accident in the present penal code..." (644)

Although Texas does have the statutory defense of necessity, see V.T.C.A., Penal Code, Section 9.22, this Court has yet to expressly discuss how it might apply to the offense of escape. Cf. *Branson v. State*, 525 S.W.2d 187 (Tex.Cr.App.1975). Today, however, this Court has the opportunity to discuss the statutory defense of necessity as it might relate to the offense of escape. It declines to do so. Why?

For all of the above and foregoing reasons, I only concur in the result that the majority opinion reaches, that appellant's conviction should be affirmed. I especially dissent to the failure of the majority of this Court to discuss appellant's second ground of error, namely, that the trial court erred when it excluded from the jury his proffered testimony, which testimony he claims went to his justification for escaping from lawful custody. The failure of this Court to discuss the issue does a disservice not only to the bench and bar of this State, but to the general public as well.

I respectfully dissent.

### APPENDIX

### OPINION

Thomas Revard Thiel, appellant, was convicted by a jury of the felony offense of

escape. See V.T.C.A., Penal Code, Section 38.07(a).[1] After the jury found that appellant had been previously convicted of two prior felony offenses, as alleged in the indictment, the trial court assessed punishment at life imprisonment. See V.T.C.A., Penal Code, Section 12.42(d), prior to amendment effective September 1, 1983.

Appellant's appeal would be frivolous except he asks this Court to hold that the defense of necessity, as provided by V.T.C.A., Penal Code, Section 9.22,[2] was available to him. He testified he escaped from lawful custody because he sincerely believed that he was suffering from "bronchial cancer" and was not then receiving any medical treatment for the disease he believed he had.

We believe that at first blush the average person would immediately reject appellant's claim, especially because he makes no assertion therein that at the time of his escape he was unlawfully confined. However, after having studied the history of the crime of escape, we have concluded that the defense of necessity to the crime of escape should, under certain limited conditions, be available to one who is accused of escaping from lawful confinement.

The crime of escape, as we know it today, is of ancient vintage. The English scholar Holdsworth informs us that by the end of the medieval period, such offenses as rescous, (the violent taking away of a man who was under arrest and setting him at liberty), escape, and prison breach came into being. Holdsworth, II *A History of English Law*, commencing at page 278.

The principle upon which appellant's request is founded was observed by the Common Law scholar Edmund Plowden in 1307, after the following English statute was enacted: "Concerning prisoners which break prison, our Lord the King willeth and commandeth, That none from henceforth that breaketh Prison shall have Judgment of Life or Member for breaking of prison only, except the cause for which he was taken and imprisoned did require such Judgment, if he had been convicted thereupon according to the Law and Custom of the Realm, *albeit in Times past it hath been ruled otherwise.*" Anno. I Edw. II Stat. 2. [Emphasis Added].

Plowden, using nothing more than common sense as authority, interpreted the above statute not to be violated where a prisoner has escaped from prison because the prison was on fire— "for he is not to be hanged because he would not stay to be burnt."[3] Plowden, however, acknowledged that the wording of the above statute did not expressly give to the prisoner who had escaped because the prison was on fire a defense, see *The Commentaries or Re-*

---

1. V.T.C.A., Penal Code, Section 38.07(a) provides:

 A person arrested for, charged with, or convicted of an offense commits an offense if he escapes from custody.

 "Escape" is defined in the Penal Code to mean the following: "unauthorized departure from custody or failure to return to custody following temporary leave for a specific purpose or limited period, but does not include a violation of conditions of probation or parole." V.T.C.A., Penal Code, Section 9.01(2).

 The State did not allege in its indictment against appellant the kind of escape he had committed. Instead, the State merely alleged that appellant had "escaped." Appellant, however, did not complain by way of a motion to quash of the conclusory allegation. The jury was only instructed on the first kind of escape, as set out in the foregoing definition for the word "escape."

2. Section 9.22 provides:

 Conduct is justified if:
 (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
 (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and
 (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

3. Interestingly, in 1869, the United States Supreme Court, in *United States v. Kirby*, 7 Wall. 482, 487, 19 L.Ed. 278 (1869), applied Plowden's thinking to a situation where delivery of the United States mail was temporarily obstructed or retarded by the arrest of the carrier upon an indictment for murder, and held that the defendant could not be convicted for committing that offense.

*ports of Edmund Plowden* (1792), and we have yet to find where the defense of self-help or necessity to the crime of escape has ever been expressly recognized by English statutory law. See 5 *Encyclopaedia of the Laws of England,* commencing with page 325; 15 *The English and Empire Digest,* commencing with page 712.

Today we join in the on-going debate, whether a person accused of committing the criminal offense of escape should have a defense. For discussions on the subject, see, for example, *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); *People v. Lovercamp,* 43 Cal. App.3d 823, 118 Cal.Reptr. 110 (1974); *Commonwealth v. Stanley,* 401 A.2d 1166 (Pa.Superior Ct.1979); *State v. Baldwin,* 388 So.2d 679 (La.Sup.Ct.1980); *State v. Stuit,* 176 Mont. 84, 576 P.2d 264 (1978); *State v. Worley,* 265 S.C. 551, 220 S.E.2d 242 (1975); *United States v. McCue,* 643 F.2d 394 (6th Cir.1981); and *United States v. Boomer,* 571 F.2d 543 (10th Cir.1978). Also see Webb, "Necessity as a Defense to Prison Escape," 21 *S.Tex.L.J.* 211 (1981), and the annotation, "Duress, necessity, or conditions of confinement as justification for escape from prison," 69 *A.L.R.3rd* 678 (1976).

We find that when the Legislature enacted the defense of necessity, see Section 9.22, supra, it did not state therein that the defense of necessity was inapplicable to the criminal offense of escape, nor did it state in the escape statute, see V.T.C.A., Penal Code, Section 38.07, that escape was a strict criminal liability offense, without any defense. We have not found anywhere where there is an appearance of a legislative purpose to exclude the justification of necessity in cases of escape. E.g., *Williams v. State,* 630 S.W.2d 640 (Tex.Cr. App.1982) (defense of necessity available to one accused of committing an assault). Also see Sullivan, "Defense of Necessity in Texas: Legislative invention comes of age," 16 Houston L.Rev. 333 (1979). Therefore, we hold that a person accused of committing the offense of criminal escape *may* be entitled to have the jury consider the defense of necessity. All cases which either hold or appear to hold to the contrary are expressly overruled.

However, because escape from lawful confinement must not be encouraged, we also hold that in escape cases, when the defense of necessity becomes applicable, see infra, it must not be invoked or applied except in the most limited of circumstances and under the most stringent of reasonable conditions. In this regard, we observe that in those jurisdictions which have given the person accused of committing the criminal offense of escape a defense, where the claim was made that the accused escaped because he was not receiving adequate medical care or treatment, the conditions imposed by the Courts before the defense becomes available to the accused actually causes the defense to amount to no defense at all. See, for example, *State v. Worley,* supra.

If a person escapes because he believes he has a serious medical problem, which he also believes warrants immediate medical attention, and he further believes that he is either not receiving adequate medical care or treatment, or believes he is receiving inadequate medical care or treatment, and this is his justification for escaping from lawful confinement, we believe that he will, within a reasonable period of time after the escape, seek medical assistance, after which he will immediately make a bona fide effort to surrender or return to custody. If his fears have been confirmed, he will then be in a position to file with the courts a substantiated petition under Art. 11.25, V.A.C.C.P.

We therefore hold that if a person is accused of committing criminal escape *by departing from custody,* without lawful authority, and he offers the defense he escaped only because he believed that he was suffering from a serious ailment, and also believed that he was not receiving adequate medical care or treatment, or believed that he was receiving inadequate

medical care or treatment, he must first present evidence outside the presence of the jury which will reflect the following: (1) that he seriously believed he was suffering from some ailment which he believed needed immediate medical attention; (2) that he escaped because he seriously believed that he was not receiving adequate medical care or treatment, or escaped because he seriously believed that the medical care or treatment he was then receiving was inadequate; (3) that in effectuating the escape he did not use or threaten to use force; and (4) that within a reasonable period of time after he had escaped, he sought or attempted to seek outside medical assistance. If the accused satisfies all of these requirements, he is then, but only then, entitled to have his defensive evidence presented to the jury, and have the jury instructed by the trial court on the defense of necessity.

The record of this cause reflects that after appellant had escaped he remained at large for approximately two months. Although the record reflects that during the period of time appellant was at large he once saw an unidentified physician, apparently at an unidentified hospital, the record, however, does not reflect that this occurred within a reasonable period of time after the escape. The proffered testimony of appellant's fellow inmates was therefore inadmissible evidence and the trial court did not err in excluding such evidence from the jury. Furthermore, the trial court did not err in not instructing the jury on the defense of necessity. Appellant's grounds of error are overruled.

The judgment is affirmed.

TEAGUE, Judge

Presiding Judge ONION, Judge THOMAS G. DAVIS, and Judge MILLER concur in the result.