TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00556-CR


NO. 03-94-00557-CR







Lonie B. Runnels, a/k/a Lonnie Bernard Runnells, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF DALLAS COUNTY, 194TH JUDICIAL DISTRICT


NOS. F93-66194-PM & F94-02243-SM, HONORABLE F. HAROLD ENTZ, JR.,


JUDGE PRESIDING







 Lonnie Bernard Runnels, appellant, was convicted in a jury trial of the offenses of
murder and attempted murder. Tex. Penal Code. Ann. §§ 19.02 & 15.01 (West 1994). (1) The jury
assessed punishment at imprisonment for fifty years for murder and nineteen years for attempted
murder. A fine of $10,000 was also assessed in each case. In five points of error, appellant
complains of the exclusion of evidence, the denial of a mistrial, the admission in evidence of
appellant's written and oral statements, and the refusal to submit certain jury instructions. We
will affirm the judgments of the trial court.

 Appellant was charged with the murder of Wonmazell "Jerome" Gordon and
attempted murder of Marvin Jenkins. These cases were consolidated for trial before the same
jury. Appellant does not challenge the sufficiency of the evidence; therefore, a brief summary
of the evidence will suffice. Appellant and several young men had a disagreement and argued
while playing dominoes. Appellant left the group saying he was going home to get a gun. Using
obscene language, appellant said he would return and kill them all. Several minutes later, the four
young men who had been playing dominoes got into Gordon's car. Gordon, who had not been
in the domino game or in the argument, backed the car a short distance. Appellant, who had
returned, pointed a handgun at the car and told Gordon not to move the car. Gordon said he had
not been in the argument and asked appellant not to shoot into his car. The car lurched ahead a
short distance and appellant fired his weapon toward Gordon, killing him. Jenkins, who also had
not been a party to the disagreement or argument, was standing nearby with two young ladies. 
Appellant asked them if they "wanted some too." As the three fled, appellant fired at them and
struck Jenkins in the shoulder, severely injuring him.

 In his first point of error, appellant asserts that the trial court erred in not
permitting him to impeach a key prosecution witness with a prior felony conviction. Cedric Deon
Shead had been convicted in Ellis County of the offense of attempted murder. Although not
crucial, Shead's eyewitness testimony bearing on appellant's intent and on his state of mind when
he shot the victim was important to the State's case.

 In a hearing outside the presence of the jury, Shead testified that he was under 17
years of age when he committed the attempted murder and that he had not been certified by a
juvenile court for prosecution in district court as an adult. The State corroborated Shead's
testimony by offering a copy of his birth certificate and a copy of the proceeding in Ellis County
which the district clerk certified was a true and correct copy of the "complete file" pertaining to
Shead's conviction. The file contained no documents showing that a juvenile court had waived
jurisdiction and certified Shead for prosecution as an adult before he was convicted in district
court. These facts rebut the presumption of validity of the judgment. Hoang v. State, 810
S.W.2d 6, 8 (Tex. App.--Dallas 1991, no pet.); see Ex parte Hoang, 872 S.W.2d 694 (Tex. Crim.
App. 1993). The trial court found that Shead's conviction as an adult in Ellis County district
court was void because that court had no jurisdiction of Shead when he was convicted. Therefore,
the trial court concluded that the judgment of conviction was inadmissible for the purpose of
impeaching Shead.

 The Penal Code provides, that unless a juvenile court waives jurisdiction and
certifies an individual for criminal prosecution, a person may not be prosecuted for or convicted
of any offense committed before reaching 17 years of age, with exceptions not applicable in this
case. Tex. Penal Code Ann. § 8.07(b) (West 1994). The family code provides requirements and
the procedure by which a juvenile court may waive jurisdiction and certify a juvenile for
prosecution as an adult in district court. See Tex. Fam. Code Ann. § 54.02 (West 1986). In the
absence of a valid waiver of jurisdiction by a juvenile court, a district court does not acquire
jurisdiction over a juvenile, and the judgment of conviction in district court is void. Ex parte
Stanley, 703 S.W.2d 686, 686 (Tex. Crim. App. 1986); see also Greyless v. State, 567 S.W.2d
216 (Tex. Crim. App. 1978); Johnson v. State, 551 S.W.2d 379 (Tex. Crim. App. 1977);
Bannister v. State, 552 S.W.2d 124 (Tex. Crim. App. 1977).

 Although Shead had not done so, it appears that he could seek to vacate his Ellis
County conviction. See Tex. Code Crim. Proc. Ann. art. 11.07, § 2 (West 1977 & Supp. 1995);
Ex parte Redmond, 605 S.W.2d 600, 601 (Tex. Crim. App. 1980). The State's attack on Shead's
conviction is collateral and only affects this case; the trial court's finding that the conviction is
void is supported by the record. It was well within the trial court's discretion to disallow Shead's
impeachment by proof of a void conviction. A trial court may exercise "wide discretion" in
determining admissibility of convictions for impeachment under the rules of criminal evidence. 
Tex. R. Crim. Evid. 609; Theus v. State, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). 
Appellant's first point of error is overruled.

 In his second point of error, appellant urges that "[t]he trial court erred in not
declaring a mistrial when a probation officer had improper contact with members of the jury just
before final arguments, in which at least one juror was told that appellant had a prior, undisclosed
conviction and had been on probation." On the morning that the jurors returned to court to
receive the court's jury charge and to hear final arguments, the court learned of an incident that
occurred the previous day. The court conducted a hearing in which four jurors testified. After
the court recessed the day before when the jurors were going to the parking lot, some of the jurors
were approached by a woman who attempted to engage them in a conversation. Juror Eric
Jakamier testified that when he and two other jurors were going to their cars, a woman came up
to them near the elevator and made some comment about the Runnels case. Jakamier testified he
"made a pretty conscious effort not to listen to anything she said," and he had no recollection of
what she said. The trial court instructed Jakamier not to discuss the hearing with other members
of the jury until after the trial was over. Juror Paula Landers testified she remembered a woman
approaching three of the jurors. The woman mentioned the Lonnie Runnels case, but one of the
jurors diverted the others by calling their attention to a commotion down the stairs behind them. 
Landers continued to walk to her car and was not sure where the woman went. Juror Gay Stokes
testified that she had been walking ahead of some of the jurors when she was approached by a
woman. Stokes was wearing her juror's badge and the woman asked her what case she was
serving on, and Stokes replied a murder case. The woman then inquired whether it was the
Lonnie Runnels case. Stokes told her it was and then got on the elevator. Stokes heard no
conversation between the woman and other jurors.

 Juror Joel Moore testified that while he was going to the parking lot he saw a
woman talking to two of the jurors; except for hearing the appellant's name, he did not hear what
the woman said. The two jurors went on their way and when Moore got on the elevator the
woman got on with him. The woman, referring to the other two jurors, commented that they
were good jurors because they wouldn't say a word about the case. Moore, who was not wearing
his juror's badge, told the woman he was also a juror and could not talk about the case. The
woman then told Moore that she had an interest in the case because she had been the defendant's
probation officer. Moore and the woman got off the elevator and went their separate ways. 
Moore testified that he thought the woman's comments were improper and avoided eye contact
with her while they were on the elevator. After they got off the elevator and as the woman
walked away, Moore observed her closely. Moore gave a detailed description of the woman who
purported to be a probation officer. The trial court told Moore that appellant was not on
probation. Moore assured the trial court that he would disregard the woman's remarks, that they
would not affect his impartiality, and that he would base his decision on the evidence admitted at
the trial. The court instructed Moore to disregard the woman's comment and told him not to
mention the matter to the other jurors.

 After the hearing, appellant requested delay "to obtain the person that tampered
with the jury" and, if no delay were granted, alternatively he requested a mistrial. The court
denied both requests. Appellant did not argue this incident as a ground for new trial. Refusal of
a continuance based on the absence of a witness may only be preserved for review by a motion
for new trial. Peterson v. State, 869 S.W.2d 429, 431 (Tex. App.--Houston [1st Dist.] 1993, no
pet.). The record does not show that the identity of the woman who purported to be a probation
officer was ever determined.

 Appellant contends that the improper communication to juror Moore--"I was the
defendant's probation officer"--obviously revealed that appellant had been previously convicted. 
Prior to the woman's improper contact with the jurors, the jury had received no evidence of
appellant's prior felony conviction. Appellant argues that, although juror Moore testified that he
would not consider the remark as he went on to hear final arguments and to deliberate, it would
be unreasonable to conclude that such evidence would not have been an influence on his impartial
judgment.

 We believe that these circumstances are no more detrimental to appellant than cases
in which a witness' unresponsive answer may reveal to the entire jury that a defendant has a prior
conviction. It has been held that in those instances an instruction for the jury to disregard the
testimony is generally sufficient to cure the error and adequately protect the defendant's rights. 
See, e.g., Richardson v. State, 624 S.W.2d 912, 913-14 (Tex. Crim. App. 1981) (instruction
cured any error from witness' reference to defendant having been in the penitentiary); Strong v.
State, 739 S.W.2d 506, 508 (Tex. App.--Fort Worth 1987), aff'd, 773 S.W.2d 543 (Tex. Crim.
App. 1989) (instruction cured any error from reference to defendant being on parole). We
conclude that the trial court's action in conducting the hearing and admonishing the juror who
received the information from the unknown woman cured the error and adequately protected
appellant's rights. The trial court properly overruled appellant's motion for mistrial. Appellant's
second point of error is overruled.

 In his third point of error, appellant contends that the trial court erred in admitting
evidence of appellant's custodial written statements because the record shows that appellant, who
is mentally retarded, did not knowingly and intelligently waive his rights before making the
custodial statements. Appellant filed a motion to suppress oral and written statements he had
made to the police; he urged these statements were not voluntary and therefore were inadmissible
in evidence. The trial court conducted a hearing to determine the voluntariness and admissibility
of appellant's statements. See Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 1979); Jackson
v. Denno, 378 U.S. 368 (1964).

 Dallas police officer Darryl Walker, responding to a disturbance call, found
appellant in an alley, and, as reported, appellant was carrying a handgun. Walker placed
appellant under arrest for carrying the weapon. Soon thereafter, another officer identified
appellant as a suspect in a recent shooting. Walker then read appellant his statutory and Miranda
v. Arizona, 384 U.S. 436 (1966), rights. Officer Walker testified that appellant was relaxed and
cooperative, that he was not intoxicated and that he did not appear to have been drinking. 
Walker, who had once worked in a hospital for retarded people, thought that appellant was normal
and understood what was taking place. Appellant did not ask for a lawyer, and admitted he had
been at the scene of the shooting. Appellant told the officer that he thought five guys were going
to "jump on" him and that he had shot somebody but did not kill him. Appellant said he was a
member of the Crypts' gang and didn't feel like anybody should disrespect him. Walker took
appellant to the homicide section of the police department.

 Police officer Stephen Jankowski stayed briefly with appellant while Officer Walker
went to the shooting scene. Jankowski testified that appellant kept repeating that "they were going
to jump on me, they were going to jump on me so I shot them, I didn't kill anybody, I had my
mom's gun, but I didn't kill anybody." Jankowski testified that appellant told him he was a
member of the Crypts from L.A., but he did not ask for a lawyer.

 Detective D. A. Watts interviewed appellant at the police department. Watts
testified that, as soon as he introduced himself to appellant, appellant started to tell about the
offense. Watts interrupted appellant and read him his Miranda rights. In the two-hour interview
that followed, appellant told Watts he had graduated from high school, but that he was a "slow
learner." Watts testified he took extra care to see that appellant understood what was going on
and that appellant appeared to understand. Appellant dictated a statement which Watts reduced
to writing. Watts called a civilian police department employee to witness appellant signing the
statement. Detective Watts read the statement aloud, and appellant decided that he wanted to add
to the statement by telling why he was at the scene. Appellant dictated a supplemental statement
and signed both statements in the presence of the witness. Telitha Shaw, the civilian employee,
testified that appellant, at Watts request, read a line of the statement slowly and clearly. She
testified that appellant seemed to understand what he was doing and did not seem confused,
scared, or lost. It appeared to Shaw that appellant wanted to give the statement voluntarily.

 Linda Ingraham, a psychologist called by the defense, testified that appellant's I.Q.
was 66 and that his mental age was that of a ten and one-half year-old child. She testified that
appellant was functionally illiterate. When asked if appellant was capable of making an intelligent
waiver of his Miranda rights, Dr. Ingraham responded, "[h]is intelligence is impaired and that's
questionable." Appellant attended special education classes beginning in the first grade and
continuing until he graduated from Dallas's Roosevelt High School. Only one student ranked
lower in his graduating class of 239. There was evidence that appellant was unable to hold a job
and that he received social security benefits as a disabled person.

 The determination of whether a defendant knowingly, intelligently, and voluntarily
waived his rights to remain silent and to assistance of counsel is based on the totality of the
circumstances; the waiver need not be express and may be found in the circumstances attending
the giving of the confession. Ingraham v. State, 679 S.W.2d 503, 508 (Tex. Crim. App. 1984);
Hawkins v. State, 660 S.W.2d 65, 72 (Tex. Crim. App. 1983); Williams v. State, 566 S.W.2d
919, 923 (Tex. Crim. App. 1978). In deciding on the voluntariness of a confession, the trial court
is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. 
Butler v. State, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994); Long v. State, 823 S.W.2d 259,
277 (Tex. Crim. App. 1991); Gentry v. State, 770 S.W.2d 780, 789-90 (Tex. Crim. App. 1988). 
Evidence adduced at a suppression hearing is viewed in the light most favorable to the trial court's
ruling. Owens v. State, 875 S.W.2d 447, 450 (Tex. App.--Corpus Christi 1994, no pet.). A trial
court's ruling on the voluntariness of a confession will be upheld so long as it is supported by the
record, absent an abuse of discretion. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990); Howe v. State, 874 S.W.2d 895, 898 (Tex. App.--Austin 1994, no pet.). The trial court
found that appellant's statements were voluntary and admissible and made specific findings of fact
upon which its conclusions were based. The record supports the trial court's findings and
conclusion, and we find no abuse of discretion. Appellant's third point of error is overruled.

 In his fourth point of error, appellant complains that the trial court erred in refusing
to grant a mistrial after detective D. A. Watts testified that appellant asked him a couple of times
how much time he was going to get. Appellant, without objecting and without stating his
grounds, moved the court to strike Watts's testimony. The trial court immediately admonished
the jury to disregard the comment and not to consider it for any purpose. The appellant received
all the relief he requested. It was not until appellant had finished his cross-examination of Watts
that he requested a mistrial and stated his grounds. The request for a mistrial was untimely. 
Failure to object in a timely and specific manner will waive error in the admission of evidence. 
Wilkerson v. State, 874 S.W.2d 127, 131 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd). 
Appellant's request for a mistrial was not timely and failed to preserve error, if any, for review. 
See Tex. R. App. P. 52(a). Moreover, the trial court's prompt jury instruction cured any error. 
Except in extreme cases, an instruction to disregard testimony is sufficient to cure to error. 
Richardson v. State, 624 S.W.2d 912, 913-14 (Tex. Crim. App. 1981). Generally, an instruction
to disregard will cure any unresponsive answer. Hughs v. State, 878 S.W.2d 142, 154 (Tex.
Crim. App. 1992). Furthermore, it appears that appellant's inquiry as to how much time he
would get was voluntary, not in response to custodial interrogation, and therefore admissible. 
Tex. Code Crim. Proc. Ann. art. 38.22, § 5 (West 1979); Meador v. State, 811 S.W.2d 612
(Tex. App.--Tyler 1989), aff'd, 812 S.W.2d 330 (Tex. Crim. App. 1991). Appellant's fourth
point of error is overruled.

 In his fifth point of error, appellant asserts that "[t]he trial court erred in refusing
to include in the court's charge various lesser included offenses and other defensive instructions
that were raised by the evidence." Appellant argues that in the murder case the evidence raised
issues of involuntary manslaughter, criminally negligent homicide, and aggravated assault and that
the court's failure to submit these lesser included offenses to the jury was error. He also argues
that in the attempted murder case the evidence raised issues of attempted involuntary manslaughter
and attempted criminally negligent homicide and that the court's failure to submit these lesser
included offenses to the jury was error. In addition, in the same point of error, appellant claims
that in each case the trial court erred in not submitting a self-defense instruction and an instruction
that "the act of firing a pistol into or at a car in and of itself is not sufficient proof of intent to
kill." Point of error five is multifarious and presents nothing for review. E.g., Adkins v. State,
764 S.W.2d 782, 785 (Tex. Crim. App. 1988); Thiel v. State, 676 S.W.2d 593. 595 (Tex. Crim.
App. 1984); Euzierey v. State, 648 S.W.2d 700, 703 (Tex. Crim. App. 1983); Kelley v. State,
817 S.W.2d 168, 172 (Tex. App.--Austin 1991, pet. ref'd). Moreover, appellant's argument
disregards an essential requirement that, in order to show error in the trial court's refusal to
submit jury instructions on a lesser included offense, it must be shown that appellant, if guilty,
is guilty only of the lesser included offense. The applicable rule is that a jury instruction on a
lesser included offense should be submitted to the jury when the lesser included offense is
included within the proof necessary to establish the offense charged and when there is evidence
in the record from which a rational jury could find that the defendant, if guilty, is guilty only of
the lesser included offense. Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993);
Adanandus v. State, 866 S.W.2d 210 (Tex. Crim. App. 1993); Burnett v. State, 865 S.W.2d 223,
227 (Tex. App.--Austin 1993, pet. ref'd). Appellant has made no argument and has not cited any
cases regarding the requirement that entitlement to a lesser included offense charge requires a
showing that, if guilty, appellant is guilty only of the lesser included offense. Appellant's fifth
point of error is overruled.

 The judgments of the trial court are affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices Davis* and Dally**

Affirmed on Both Causes

Filed: November 15, 1995

Do Not Publish








 * Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).


** Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   This offense took place before September 1, 1994 and is governed by the law in effect
at the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993
Tex. Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994 have
no substantive effect on this offense, the current code is cited for the sake of convenience.



de Crim. Proc. Ann. art. 38.22, § 5 (West 1979); Meador v. State, 811 S.W.2d 612
(Tex. App.--Tyler 1989), aff'd, 812 S.W.2d 330 (Tex. Crim. App. 1991). Appellant's fourth
point of error is overruled.

 In his fifth point of error, appellant asserts that "[t]he trial court erred in refusing
to include in the court's charge various lesser included offenses and other defensive instructions
that were raised by the evidence." Appellant argues that in the murder case the evidence raised
issues of involuntary manslaughter, criminally negligent homicide, and aggravated assault and that
the court's failure to submit these lesser included offenses to the jury was error. He also argues
that in the attempted murder case the evidence raised issues of attempted involuntary manslaughter
and attempted criminally negligent homicide and that the court's failure to submit these lesser
included offenses to the jury was error. In addition, in the same point of error, appellant claims
that in each case the trial court erred in not submitting a self-defense instruction and an instruction
that "the act of firing a pistol into or at a car in and of itself is not sufficient proof of intent to
kill." Point of error five is multifarious and presents nothing for review. E.g., Adkins v. State,
764 S.W.2d 782, 785 (Tex. Crim. App. 1988); Thiel v. State, 676 S.W.2d 593. 595 (Tex. Crim.
App. 1984); Euzierey v. State, 648 S.W.2d 700, 703 (Tex. Crim. App. 1983); Kelley v. State,
817 S.W.2d 168, 172 (Tex. App.--Austin 1991, pet. ref'd). Moreover, appellant's argument
disregards an essential requirement that, in order to show error in the trial court's refusal to
submit jury instructions on a lesser included offense, it must be shown that appellant, if guilty,
is guilty only of the lesser included offense. The applicable rule is that a jury instruction on a
lesser included offense should be submitted to the jury when the lesser included offense is
included within the proof necessary to establish the offense charged and when there is evidence
in the record from which a rational jury could find that the defendant, if guilty, is guilty only of
the lesser included offense. Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993);
Adanandus v. State, 866 S.W.2d 210 (Tex. Crim. App. 1993); Burnett v. State, 865 S.W.2d 223,
227 (Tex. App.--Austin 1993, pet. ref'd). Appellant has made no argument and has not cited any
cases regarding the requirement that entitlement to a lesser included offense charge requires a
showing that, if guilty, appellant is guilty only of the lesser included offense. Appellant's fifth
point of error is overruled.

 The judgments of the trial court are affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices Davis* and Dally**

Affirmed on Both Causes